**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:20-CV-637-RJC-DCK**

| | | |
|---|---|---|
| **SELEX ES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **NDI TECHNOLOGIES, INC., d/b/a NDA** | ) | |
| **RECOGNITION SYSTEMS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant NDI Technologies, Inc.'s

Motion To Dismiss The First Amended Complaint For Improper Venue, Or Alternatively, To

Transfer Under 28 U.S.C. § 1406(a), And Motion To Dismiss The Claims Of Infringement For

Failure To Plead A Claim Upon Which Relief May Be Granted" (Document No. 10).  This motion

has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now

ripe for disposition.  Having carefully considered the arguments, the record, and the applicable

authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and

<u>denied</u> in part, as discussed below.

## I.     BACKGROUND

Plaintiff Selex ES Inc. ("Plaintiff" or "Selex") initiated this action with the filing of a

"Complaint" on November 17, 2020 against Defendant NDI Technologies, Inc. ("Defendant" or

"NDI").  (Document No. 1).  On March 16, 2021, Defendant filed a "…Motion To Dismiss For

Improper Venue, Or Alternatively, To Transfer Pursuant To 28 U.S.C. § 1406(a)."  (Document

No. 7).  Plaintiff filed its "First Amended Complaint" on March 30, 2021.  (Document No. 9).  On

account of the filing of the Amended Complaint, the undersigned denied Defendant's Motion to Dismiss (Document No. 7) as moot on October 12, 2021.  (Document No. 14).

Plaintiff's claims arise out of its allegations that NDI is infringing its rights in U.S. Patent No. 7,504,965 ("the '965 Patent") through NDI's sale of two automated license plate reader ("ALPR") products – the "Road Warrior$^{TM}$ Radar" and the "Road Warrior$^{TM}$ VMS" systems. (Document No. 9, p. 2).  Plaintiff contends that one of its own products is a "license plate reader [] and system[]," called the ELSAG Plate Hunter ALPR System.  Id.  Plaintiff suggests that it "is a leader in air traffic management, critical communications technologies, and law enforcement systems for military and civil markets."  Id.  Plaintiff further contends that it "is the owner of all right, title, and interest in and to U.S. Patent No. 7,504,965 ('the '965 Patent') entitled 'Portable Covert License Plate Reader.'"  Id.  Plaintiff alleges that through Defendant's "manufacturing, using, offering for sale and selling" of the aforementioned "portable covert license plate reader products and systems," Defendant is infringing Plaintiff's rights in the '965 Patent.  Id.

The Amended Complaint alleges three claims against Defendant: (1) infringement of the '965 Patent in violation of 35 U.S.C. § 271;  (2) induced infringement of the '965 Patent;  and (3) contributory infringement of the '965 Patent.  Id. at pp. 3-6.  The Amended Complaint also seeks enhanced damages for willful infringement pursuant to 35 U.S.C. § 284.

On April 13, 2021, Defendant filed its "…Motion To Dismiss The First Amended Complaint For Improper Venue, Or Alternatively, To Transfer Under 28 U.S.C. § 1406(a), And Motion To Dismiss The Claims Of Infringement For Failure To Plead A Claim Upon Which Relief May Be Granted" (Document No. 10) and "…Memorandum Of Law In Support Of Its Motion To Dismiss…" (Document No. 11).  On April 27, 2021, Plaintiff filed its "…Response In Opposition To Defendant NDI Technologies, Inc.'s Motion To Dismiss The First Amended Complaint For

2

Improper Venue, Or Alternatively, To Transfer Under 28 U.S.C. § 1406(a), And Motion To Dismiss The Claims Of Infringement For Failure To Plead A Claim Upon Which Relief May Be Granted" (Document No. 12).  Finally, on May 3, 2021, Defendant filed its "…Reply Brief In Support Of Its Motion To Dismiss The First Amended Complaint For Improper Venue, Or Alternatively, To Transfer Under 28 U.S.C. § 1406(a), And Motion To Dismiss The Claims Of Infringement For Failure To Plead A Claim Upon Which Relief May Be Granted" (Document No. 13).  The pending motion is now ripe for review and a recommendation to the presiding district judge.

## II.  STANDARD OF REVIEW

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(3)**

When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action.  Static Control Components, Inc. v. Intersolution Ventures, Ltd., 2006 WL 2042900, at *10 (M.D.N.C. July 17, 2006) (citing Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996)).  "To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." Eyetalk365, LLC v. Zmodo Tech. Corp. Ltd., 2017 WL 4684189, at *1 (W.D.N.C. Oct. 18, 2017) (quoting Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004)).  And, "[i]n assessing whether there has been a prima facie venue showing, [the court] view[s] the facts in the light most favorable to the plaintiff."  Eyetalk365, LLC, 2017 WL 4684189, at *1 (quoting Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 (4th Cir. 2012)).  Ordinarily, venue in civil cases is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

> property that is the subject of the action is situated;  or (3) if there is
> no district in which an action may otherwise be brought as provided
> in this section, any judicial district in which any defendant is subject
> to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  However, in patent infringement cases, a special venue statute applies. Pursuant to that statute, venue in patent infringement cases is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

Moreover, when venue is improper in the district in which a case has been filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "The decision to transfer or dismiss is a matter within the sound discretion of the district court."  Simpson Performance Prods., Inc. v. NecksGen, Inc., 2017 WL 3616764, at *8 (W.D.N.C. Aug. 23, 2017) (internal quotations and citations omitted).

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  The court "should view the complaint in the light most favorable to the plaintiff."  Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III.  DISCUSSION

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(3)**

In patent infringement cases, venue is proper *only* in the judicial district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b);  see Simpson Performance Prods., Inc., 2017 WL 3616764, at *3 ("§ 1400(b) is the sole and exclusive venue statute governing patent litigation").  With respect to the first option for venue supplied by the statute, a corporate defendant resides only in its "[s]tate of incorporation."  TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S.Ct. 1514, 1521 (2017).  As Defendant states in its pending motion to dismiss, "[i]t is undisputed that NDI is incorporated in the State of Florida." (Document No. 11, p. 9).  Therefore,

5

if the Western District of North Carolina does not satisfy the second option under the patent infringement venue statute, venue would be improper in this district.  That issue – whether the Western District of North Carolina is a district in which NDI has a regular and established place of business and has committed acts of infringement – is before the Court and will be analyzed below.

### a.  Regular and Established Place of Business

According to the Federal Circuit, to satisfy the second option for venue under the patent infringement venue statute: "(1) there must be a physical place in the district;  (2) it must be a regular and established place of business;  and (3) it must be the place of the defendant."  In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017).  And, to constitute a "regular and established place of business," the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business'" is required.  In re Google LLC, 949 F.3d 1338, 1345 (Fed. Cir. 2020).  In order to be a "regular" place of business, it must "operate[] in a steady[,] uniform[,] orderly[, and] methodical manner."  In re Cray Inc., 871 F.3d at 1362 (internal quotations and citations omitted).  To be considered "established," the "place in question must be settle[d] certainly, or fix[ed] permanently."  Id. at 1363 (internal quotations and citations omitted).

There is no dispute that the first and third prongs of the Cray test are satisfied – clearly, by virtue of the office that NDI rents in Charlotte, there is a "physical place" in the district, and that office is NDI's and therefore "the place of the defendant."  See (Document No. 9, p. 2);  (Document No. 11, p. 9) ("NDI leases a small office for [one of its employee's] convenience in Charlotte, North Carolina").  What Defendant contests, then, is the second prong.  Defendant argues that the Charlotte office is not "a regular and established place of business" under the patent venue statute

because its North Carolina-based employee "is not regularly at the office," but rather "[h]e comes into the office to perform maintenance or repairs on equipment if [he] cannot repair in the field." (Document No. 11, p. 10).  Furthermore, not only does Defendant contend that this office is only "sporadic[ally]" used such that it its employee's presence is not "regular," but so, too, does it argue that the type of work that is conducted at the office – "[m]aintaining and repairing of equipment" – "is meaningfully different from and only ancillary to the sales and promotion of NDI products" and is therefore not conduct incident to NDI's "business." Id. at pp. 10-11.

The undersigned concludes that NDI's Charlotte office is a "regular and established place of business" under the meaning of the patent infringement venue statute at 28 U.S.C. § 1400(b). The Charlotte office of NDI is regular in the sense that it does operate in a steady manner – when NDI's employee deems it necessary, "[h]e comes into the office to perform maintenance or repairs on equipment if [he] cannot repair in the field." (Document No. 11, p. 10).  In this sense, the office has a purpose that is consistently and methodically employed.  Maintenance of NDI's ALPR equipment is not sporadic at the Charlotte location – it is regularly performed in-office when circumstances in the field do not permit an on-site repair.  See In re Cray Inc., 871 F.3d at 1362 ("[t]he doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business;  yet a series of such acts would be so considered" (internal quotations and citations omitted)).  Thus, NDI has an employee who is regularly and physically present at the place.

Furthermore, undoubtedly, the NDI Charlotte office is "established" for purposes of the patent venue statute.  Given that it has been leased for at least four years, and a lease implies a sense of permanence for a fixed period of time, the office is a place that is clearly "for a meaningful time period [] stable, established." In re Cray Inc., 871 F.3d at 1363; see (Document No. 12, p.

2) ("[p]ublic records [] show that NDI opened a physical office in Charlotte in or around 2017").

Moreover, another relevant consideration – in addition to the actual performance of business that

NDI's employee conducts at the Charlotte office – is that NDI "lists the alleged place of business

on [its] website." In re Cray Inc., 871 F.3d at 1363.  According to Plaintiff, "[t]he Charlotte office

is one of only four offices, including its headquarters, that NDI has in North America, which NDI

prominently touts on its website."  (Document No. 12, pp. 4-5).  Clearly, then, the Charlotte office

is established.

Furthermore, the very fact that NDI has leased an office for four years *for the purpose of

allowing its employee to perform repairs on the products that it sells* demonstrates the importance

of such work to NDI's business – if these repairs were not part of NDI's regular "business," the

need for an office space would not be so pressing as to warrant the leasing of a fixed place.

Defendant reads too broadly the Federal Circuit's interpretation of what constitutes "business" for

purposes of the patent infringement venue statute.  In Google, the Federal Circuit considered

whether venue was proper in the Eastern District of Texas based on the presence of Google servers

in the district.  949 F.3d at 1340.  The servers, however, were not located at a Google-owned

facility but rather within datacenters owned by internet service providers ("ISPs").  Id.  The ISPs

performed maintenance upon Google's servers rather than Google employees themselves

performing necessary maintenance.  Id. at 1341.  As a result, the Federal Circuit concluded that

maintenance performed upon the Google servers – by individuals not employed by Google – was

too attenuated to Google's actual business of "providing video and advertising services to residents

of the Eastern District of Texas through the Internet."  Id. at 1340-41.

Here, however, the facts are different.  Not only is an NDI employee himself the one

performing the maintenance, but so, too, is the maintenance being performed as incident to the

sale of the products themselves (the license plate readers). In this way, repair of the actual equipment that NDI sells is not "ancillary to…furnishing to customers of what the business offers." Id. at 1346. Instead, the license plate readers *are* what NDI's business offers, and so repairs performed upon the products is certainly within NDI's "business." The undersigned is thus persuaded by Plaintiff's argument that NDI does conduct business at the Charlotte office because "maintaining and repairing equipment is 'integral' to NDI's business of providing functioning ALPR systems." (Document No. 12, p. 10) (quoting Rensselaer Polytechnic Inst. v. Amazon.com, Inc., 2019 WL 3755446, at * (N.D.N.Y. Aug. 7, 2019)).

The Court concludes that NDI has a regular and established place of business in this district for purposes of the patent infringement venue statute at 28 U.S.C. § 1400(b).

### b. Committed Acts of Infringement

The Amended Complaint alleges that

> Defendant is engaged in the business of manufacturing, using, offering for sale and selling, throughout the United States and in this judicial district, highway safety and traffic control products, and surveillance systems, including portable covert license plate reader products and systems such as Defendant's 'Road Warrior Radar' and [']Road Warrior VMS' systems, that infringe the '965 Patent…upon information and belief, Defendant has sold and offered for sale the Accused Products to the Charlotte-Mecklenburg Police Department.

(Document No. 9, pp. 2-3). Undoubtedly, then, Plaintiff has made the requisite *prima facie* showing that venue is proper in the Western District of North Carolina pursuant to the patent infringement venue statute. At the motion to dismiss stage, a prima facie showing is all that is required to survive dismissal. See Eyetalk365, LLC, 2017 WL 4684189, at *1. Given that Plaintiff has alleged that Defendant committed acts of infringement in this district, the Court finds that dismissal on grounds of improper venue is not appropriate at the motion to dismiss stage. See

<u>Symbology Innovations, LLC v. Lego Sys., Inc.</u>, 282 F. Supp. 3d 916, 928 (E.D. Va. 2017) ("an allegation of infringement is itself sufficient to establish venue" (internal quotations and citations omitted)).   Therefore, the undersigned respectfully recommends that Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) be denied.

Because the Court finds that venue is appropriate under the patent infringement statute at 28 U.S.C. § 1400(b), the Court will decline to recommend that the Defendant's request to transfer to the Middle District of Florida under 28 U.S.C. § 1406(a) be granted.  (Document No. 11, p. 11). That provision is only appropriate in a case in which Plaintiff filed its lawsuit in an *incorrect* venue – here, venue is proper, and so the provision does not apply.   <u>Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas</u>, 571 U.S. 49, 55 ("Section 1406(a) and Rule 12(b)(3) allow dismissal [or transfer] only when venue is 'wrong' or 'improper'").

**Motion To Dismiss Pursuant To Rule 12(b)(6)**

**a.  Direct Infringement Claim**

In contrast to Defendant's argument, the undersigned concludes that Plaintiff has adequately stated a claim for direct infringement such that the claim survives the motion to dismiss. According to the Federal Circuit, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met."   <u>Nalco Co. v. Chem-Mod, LLC</u>, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotations and citations omitted). Defendant argues for a higher pleading standard for direct infringement claims, one that would require Plaintiff to demonstrate how the infringing product "meets every element of a patent claim."  <u>RavenSafe, LLC v. Nexus Techs., Inc.</u>, 2019 WL 4594197, at *3 (W.D.N.C. Sept. 20, 2019); <u>see</u> (Document No. 11, pp. 13-15).  Respectfully, that is not the standard that courts apply when analyzing patent infringement claims at the motion to dismiss stage of a lawsuit.  Instead,

"[t]he complaint [simply] must place the 'potential infringer … on notice of what activity … is being accused of infringement.'"   Nalco Co., 883 F.3d at 1350 (quoting K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013)).

Although Defendant concedes that "Plaintiff identifies Claim 1 of the '965 Patent that it alleges NDI infringes," Defendant then proceeds to suggest that in order to survive the motion to dismiss, Plaintiff must show with particularity how "the accused products…[meet each] element[]" of Claim 1 (and not just the first element that Plaintiff describes). Id. at p. 14. Analyzed under the appropriate standard then, Defendant's statements even recognize that Plaintiff has adequately alleged a direct infringement claim to survive a 12(b)(6) motion. The Amended Complaint, actually, does allege that "Defendant's Accused Products infringe at least Claim 1 of the '965 Patent because" they comprise the three elements of Claim 1, including the "portable license plate reader," the "mobile surveillance unit," and the "operations center." (Document No. 9, p. 3). At this stage, such allegations are sufficient – Defendant is on notice of how it is allegedly infringing. Plaintiff does not need to "prove its case at the pleading stage." Nalco Co., 883 F.3d at 1350 (citing In re Bill of Lading Transmission and Processing Sys. Patent Litigation, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Therefore, the undersigned respectfully recommends that the motion to dismiss the direct infringement claim be denied.

### b. Induced Infringement

Pursuant to 35 U.S.C. § 371(b), a party that "actively induces infringement of a patent shall be liable as an infringer." The elements of induced infringement include: "that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009). As to the prong that requires Plaintiff to allege that Defendant

"knowingly induced the infringing acts," Defendant does not appear to question that the Amended Complaint adequately pleads that element.  Indeed, the Court finds that Plaintiff's statement that "Defendant is aware or should have known that use and operation of the Accused Products in the United States by Defendant or its customers would directly infringe the '965 Patent" is sufficient to satisfy the element of the act of knowingly inducing infringement.  (Document No. 9, p. 5).  The undersigned will focus its analysis, therefore, on the other two elements of an induced infringement claim with which Defendant takes issue.  Defendant argues that the induced infringement claim should be dismissed for two reasons: (1) "it fails to allege that NDI had pre-suit knowledge of the '965 Patent;" and (2) "it fails to allege that NDI had the specific intent to encourage infringement." (Document No. 11, pp. 15-16).  As to each of these arguments, Defendant respectfully is incorrect as explained below.

Although knowledge of the patent is an element of an induced infringement claim, the timing of when that knowledge is gained appears to be an issue on which federal courts are split. See Vita-Mix Corp., 581 F.3d at 1328.  Without more explicit guidance from the Federal Circuit, the undersigned will follow the approach of the majority of federal courts that have addressed the issue.  Defendant contends that in order to state a claim for induced infringement, Plaintiff needs to have pled that "[t]he defendant must have had knowledge of the patent prior to the lawsuit." (Document No. 11, p. 16).  In this way, Defendant argues, allegations of knowledge based on "knowledge created by the filing of the lawsuit" are "insufficient."  Id.  Not so.  The undersigned takes the view – as do a majority of federal courts – that the timing of when a defendant gained knowledge of the patent (before or after the lawsuit was filed) is "immaterial."  Rembrandt Social Media, LP v. Facebook, Inc., 950 F. Supp. 2d 876, 881, n.3, 882 (E.D. Va. 2013) (collecting cases).  Instead "[w]hat matters is not how the putative infringer learned of the patents…but simply that

the putative infringer has knowledge of the allegedly infringed patent and its claims."  Id. at 882;
see also Smart Wearable Techs. Inc. v. Fitbit, Inc., 274 F. Supp. 3d 371, 375 (W.D. Va. 2017) ("to
the extent that [the plaintiff] seeks to recover for acts of induced infringement that occurred after
the commencement of this action, the court concludes that the filing of the complaint satisfies the
knowledge requirement").

Of course, as here, where Plaintiff has alleged the knowledge element on account of
Defendant having "received a cease-and-desist letter [on November 18, 2020] from Plaintiff's
counsel with an attached courtesy copy of the Complaint filed in this action," damages are limited
to infringement occurring after the Defendant learned of the existence of the patent.  (Document
No. 9, p. 3);  see Rembrandt Social Media, LP, 950 F. Supp. 2d at 882 ("Plaintiff may only recover
damages for indirect infringement for the period of time that commences once the putative
infringer learns of the patent").   That issue is not presently before the Court, but it bears
mentioning.

As to Defendant's argument that Plaintiff's induced infringement claim should fail because
Plaintiff does not adequately plead specific intent, the undersigned respectfully disagrees.  See
(Document No. 11, pp. 17-19).  As Plaintiff states in response, "the [Amended Complaint] alleges
that NDI provides its customers with instructions, training, and support to facilitate the use and
operation of the Accused Products in a manner that directly infringes that '965 Patent, and does so
with the intent that its customers will" infringe the Patent.  (Document No. 12, p. 15);  see
(Document No. 9, p. 4).  At the motion to dismiss stage, allegations of "active steps taken to
encourage direct infringement…[such as] advertising an infringing use or instructing how to
engage in an infringing use" are sufficient in terms of satisfying the specific intent prong of an
induced infringement claim at the pleading stage.  Takeda Pharm. U.S.A., Inc. v. West-Ward

Pharm. Corp., 785 F.3d 625, 630-31 (Fed. Cir. 2015) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 935 (2005)). This is because "[t]he Federal Circuit has recognized that the requisite intent to induce infringement may be established through circumstantial evidence." Smart Wearable Techs. Inc., 274 F. Supp. 3d at 375-76.

Here, the fact that the Amended Complaint alleges that Defendant "provides its customers with instructions regarding the infringing use and operation" of the ALPR products and "trains, facilitates, and/or provides support to its customers in the infringing use and operation of the" ALPRs is sufficient to survive a motion to dismiss at this stage of the litigation.  (Document No. 9, p. 4).  These allegations satisfy the specific intent prong, a necessary element of an induced infringement claim.  See Paice LLC v. Volvo Car Corp., 2021 WL 2580149, at *6 (D. Md. June 23, 2021) ("[Plaintiffs] contend that their allegation that [Defendant] supplied [instruction] manuals supports an inference that it specifically intended that its customers would [operate the allegedly infringing products,] and, therefore, infringe the patents in-suit."  The Court found that such allegation was sufficient to "state a plausible claim for relief" for induced infringement.). Therefore, because the undersigned finds that the Amended Complaint adequately pleads allegations to satisfy each element of an induced infringement claim, the undersigned respectfully recommends that Defendant's motion to dismiss this claim pursuant to Rule 12(b)(6) be denied.

### c.  Contributory Infringement

Pursuant to 35 U.S.C. § 271(c), a party is liable for contributory infringement where a plaintiff can show "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention."  Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010).  The relevant statute states,

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).  Defendant argues that Plaintiff's contributory infringement claim should fail because it does not "properly plead that [] NDI had knowledge of the '965 Patent before this litigation." (Document No. 11, p. 19).  Additionally, Defendant contends that "NDI's products are license plate readers with a wide variety of noninfringing uses," which it alleges that Plaintiff's Amended Complaint glosses over with a conclusory allegation that "the Accused Products are not suitable for substantial non-infringing use." Id. at p. 21.  Finally, Defendant contends that Plaintiff "has failed to allege what part the component plays in the claimed invention, let alone that it is a 'material part of the invention.'" Id. at p. 20.

Given that the undersigned is respectfully recommending that Defendant's motion to dismiss Plaintiff's claim for direct infringement be denied, the Court concludes that there are allegations of direct infringement in the Amended Complaint sufficient to satisfy the first prong of a contributory infringement claim.  See supra pp. 10-11.  Defendant also does not seem to contest that Plaintiff has sufficiently pled the first element of a contributory infringement claim, stating that "[o]f these four elements, Plaintiff has failed to properly plead three of them." (Document No. 11, p. 19).

On the second prong – whether Plaintiff has adequately alleged that Defendant had knowledge of the patent – the undersigned finds that Plaintiff has properly pled this element.  For the same reasons (which the undersigned will not repeat) that the undersigned finds that the knowledge element is satisfied with respect to the induced infringement claim, the element is

satisfied here, too.  See supra pp. 12-13.  It bears mentioning again that any damages that Plaintiff can ultimately seek for any potential successful contributory infringement claim would be limited to the time period starting after the Defendant gained knowledge of the patent (post-initiation of the instant litigation).  See Rembrandt Social Media, LP, 950 F. Supp. 2d at 882.

Moreover, Plaintiff has adequately pled the third element of a successful contributory infringement claim – that Defendant's product has no substantial non-infringing uses.  In order to successfully allege that a component has no substantial non-infringing use, Plaintiff must plausibly plead that Defendant's technology cannot "be used for multiple other purposes."  In re Bill of Lading, 681 F.3d at 1338.  Furthermore, just because "practicing the patented method may be the most logical or useful purpose for [Defendant's] products does not render the alternative uses 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'"  Id. (quoting Vita-Mix Corp., 581 F.3d at 13).  Furthermore, the undersigned appreciates the difficulty of satisfying this element of the claim – "[w]hile Twombly and Iqbal require a certain level of specificity in a complaint's allegations, this Court notes the difficulty in alleging sufficient facts to demonstrate a negative at this stage."  Enthone Inc. v. BASF Corp., 126 F. Supp. 3d 281, 288 (N.D.N.Y. 2015) (finding that the plaintiff had satisfied the plausibility standard for alleging the no substantial non-infringing uses element of a contributory infringement claim) (internal quotations and citations omitted).

In light of the Amended Complaint's allegations, it stretches the imagination to conceive of any possible use for Defendant's license plate reader products that do not involve exactly the patent's purpose: "monitoring license plates without detection by passing vehicles," for use in "surveillance systems for law enforcement." (Document No. 9-1, p. 13).  The Amended Complaint adequately states that "Defendant's Accused Products infringe at least Claim 1 of the '965 Patent

because they are designed to monitor a plurality of vehicle license plates" because the "portable covert license plate reader product[]" is designed for use by law enforcement to "automatically imag[e] a license plate and extract[] a character string from the image for each of a plurality of moving vehicles that pass through a field of view of the camera without detection by the moving vehicles." (Document No. 9, pp. 2-3). It is not clear to the undersigned how Defendant can conceivably argue that its contended "alternative" uses for its products – such as "traffic control and controlling access to supervised areas such as parking lots or time limited parking spaces" – are not covered by the scope of the patent's purpose – to monitor license plates without detection. At the motion to dismiss stage of the litigation, Plaintiff has satisfied the plausibility standard for pleading that the Defendant's allegedly infringing products do not have substantial non-infringing use.

The fourth prong of a contributory infringement claim, though, is not successfully pled so as to survive Defendant's motion to dismiss the claim. Plaintiff's Amended Complaint does not contain any allegation about materiality – a necessary element of a contributory infringement claim. Fujitsu Ltd., 620 F.3d at 1326 (stating that the fourth element of a plausible contributory infringement claim is "that the component is a material part of the invention"); see (Document No. 9, pp. 5-6). Although Plaintiff would have the Court infer the materiality element of the contributory infringement claim, where it has not been pled, it is not the Court's role to read into the Amended Complaint non-existent allegations. See Cannarella v. Volvo Car USA LLC, 2016 WL 9450451, at *7 (C.D. Cal. Dec. 12, 2016) ("[t]he Complaint also fails to plead factual allegations regarding which component of Defendant['s] [product] is a 'material part' of the [patented] invention"). As to Plaintiff's contributory infringement claim, the undersigned therefore respectfully recommends that Defendant's motion to dismiss such claim be granted.

17

### d. Enhanced Damages for Willful Infringement

Plaintiff seeks enhanced damages for willful infringement pursuant to 35 U.S.C. § 284. See (Document No. 9, pp. 5-6).  Under this statute, "courts 'may increase the damages up to three times the amount found or assessed.'"  Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S.Ct. 1923, 1928 (2016) (citing 35 U.S.C. § 284).  Such enhanced damages are appropriate when a patent infringer demonstrates "subjective willfulness…[either] intentional or knowing."  Halo Elecs., Inc., 136 S.Ct. at 1933.  Furthermore, even after the Supreme Court's ruling in Halo, which abrogated the previous test for awarding enhanced damages for willful infringement pursuant to § 284, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."  WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016).  The timing of such knowledge, though, matters for purposes of willful infringement and an award of enhanced damages.  In re Seagate Tech., LLC, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct"), abrogated on other grounds by Halo Elecs., Inc., 136 S.Ct. 1923.

Plaintiff indicates that it cannot, at this stage of the litigation, "plead facts regarding NDI's pre-litigation knowledge of the '965 Patent."  (Document No. 12, p. 19).  For this reason, it indicates that it "is willing to voluntarily dismiss its claim for willful infringement with an express reservation of rights to re-assert the claim if evidence obtained in discovery shows that NDI was aware of the '965 Patent prior to the commencement of this action."  Id.  Defendant also seeks to dismiss Plaintiff's willful infringement claim pursuant to Rule 12(b)(6).  (Document No. 11, pp. 22-23).  However, what Plaintiff seeks is enhanced damages on account of willful infringement – which is not a separate claim in Plaintiff's Amended Complaint.  The undersigned will therefore

not express an opinion as to what damages are appropriate at this motion to dismiss stage of the litigation.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant NDI Technologies, Inc.'s Motion To Dismiss The First Amended Complaint For Improper Venue, Or Alternatively, To Transfer Under 28 U.S.C. § 1406(a), And Motion To Dismiss The Claims Of Infringement For Failure To Plead A Claim Upon Which Relief May Be Granted"  (Document No. 10) be **GRANTED in part** as to the contributory infringement claim and **DENIED in part** as to Plaintiff's claims for direct infringement and induced infringement.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: December 30, 2021

David C. Keesler
United States Magistrate Judge